1  Matthew A. Smith
   MIGLIACCIO & RATHOD LLP
2  201 Spear Street, Suite 1100
   San Francisco, CA 94105
3  Tel: (831) 687-8255
   [Additional Counsel on Signature Page]
4  Attorneys for Plaintiff and Others Similarly Situated

5

6                    **UNITED STATES DISTRICT COURT**

7                  **NORTHERN DISTRICT OF CALIFORNIA**

8

9  CHRISTINA KEY, individually and on behalf of   Case No.:
   all others similarly situated,

10              Plaintiff,

11    vs.                                          **CLASS ACTION COMPLAINT**

12  BREVILLE USA, INC.,                            **(1) Breach of Implied Warranties;**
                                                   **(2) Violation of the Magnuson-Moss Warranty**
13                                                     **Act, 15 U.S.C. § 2301(3);**
                Defendant                          **(3) Violation of California Unfair Competition**
14                                                     **Law, Cal. Bus. & Pro. Code §17200, *et seq*.;**
                                                   **(4) Violation of Consumer Legal Remedies**
15                                                     **Act, Cal. Civ. Code § 1750;**
                                                   **(5) Violation of Song-Beverly Consumer**
16                                                     **Warranty Act, Cal. Civ. Code § 1792, *et***
                                                       ***seq*.;**
17                                                 **(6) Violation of Song-Beverly Consumer**
                                                       **Warranty Act, Cal. Civ. Code § 1792, *et***
18                                                     ***seq*.;**
                                                   **(7) Violation of California False Advertising**
19                                                     **Law, Cal. Bus. & Pro. Code § 17500, *et***
                                                       ***seq*.;**
20                                                 **(8) Unjust Enrichment/Restitution;**
                                                   **(9) Fraudulent Omission or Concealment;**
21                                                 **(10)   Declaratory Relief**

22

23

24                                                 **DEMAND FOR JURY TRIAL**

25

26

27

CLASS ACTION COMPLAINT - 1

Plaintiff Christina Key ("Plaintiff"), by and through her attorneys, individually and behalf of all others similarly situated, brings this action against Breville USA, Inc. ("Defendant"). Plaintiff alleges the following based on personal knowledge as to her own acts and based upon the investigation conducted by her counsel as to all other allegations.

## INTRODUCTION AND SUMMARY OF ACTION

1.      Plaintiff brings this consumer class action lawsuit against Defendant, which manufactured, marketed, distributed, and sold the Breville Smart Oven Air Fryer Pro, model number BOV900BSSUSC (the "Oven"), without disclosing to purchasers that the Oven's glass window has a propensity to explode spontaneously and without external impact (the "Defect"). Upon information and belief, the Defect is caused by the inclusion of the chemical compound nickel sulphide in the glass.

2.      This Defect creates a serious safety issue and renders the Oven unusable after manifestation. Information about the Defect would therefore be highly material to reasonable consumers.

3.      Defendant is unwilling to acknowledge the Defect, much less to eliminate it, or to provide refunds to consumers who have encountered it. Consequently, Plaintiff seeks to correct that injustice for herself, and others similarly situated.

4.      Defendant designs, manufactures, markets, advertises, distributes, and sells high-end appliances to consumers throughout the United States from its headquarters located in California.

5.      Defendant distributes and sells its appliances, including the Oven, both directly through its website and through its network of authorized retailers.

6.      Over the course of several decades, Defendant marketed its line of products as high-end luxury appliances and gained the trust of consumers, who reasonably believe that Defendant's appliances, including its ovens, are made with quality materials. Consumers reasonably believe Defendant's appliances can be used safely as intended.

7.     The Oven itself retails for approximately $395.95 pre-tax.[1] As a premium countertop oven, it boasts 13 different preset functions: Bake, Airfry, Bagel, Broil, Roast, Warm, Pizza, Proof, Reheat, Toast, Cookies, Slow Cook, and Dehydrate. Meanwhile, the Oven boasts a distinct advantage over traditional ovens because it features a fan system that speeds up the heating process.

8.     The Oven's high price tag and Breville's superior image of luxury and quality hide an alarming Defect: the glass window in the front of the Oven is predisposed to explode. When this window explodes with no warning, anyone standing nearby, or looking through the window, is in danger of being struck by sharp and burning hot shards of glass. The glass fragments, which are hot enough to melt the sealant on concrete countertops, have been found as far as 15 feet away from the Oven after such an explosion.  In addition to the spontaneous explosion, the Oven is frighteningly predisposed to catching fire.

9.     The Defect is the result of uniform flaws in materials and/or workmanship and therefore poses a serious safety hazard to customers, operators, and anyone unfortunate enough to be standing nearby.

10.    Moreover, once the Oven's glass window bursts, it is impossible to keep the temperature inside the oven at the level necessary to cook food. Therefore, even if the user somehow felt safe using the Oven again after the Defect manifests, it would not be possible to do so.

11.    The Defect renders the Oven useless at best and dangerous at worst.

12.    Numerous consumers have reported the Defect, which may manifest at any time. Consumers report witnessing the Defect as early as only weeks after purchase.

13.    Defendant is aware of the Defect. Not only does Defendant have exclusive, non-public knowledge and data concerning the Oven through its own testing data, customers' complaints, warranty claims, and repair orders, it is or should be aware of the substantial numbers of consumer complaints on public forums. Moreover, Defendant is aware of a multitude of consumer complaints spanning several years, submitted to the United States Consumer Product Safety Commission ("CPSC")[2] identifying the

---

[1] https://www.breville.com/us/en/products/ovens/bov900.html?sku=BOV900BSSUSC (last visited September 24, 2022)
[2] https://www.saferproducts.gov/

Defect as the source of the complaint. Despite numerous customer complaints—including those directly posted on Defendant's own website—Defendant has refused to take action in the form of a recall or refund of the full purchase price.

14.     Selling Ovens with dangerously defective glass windows jeopardizes the safety of the public.

15.     Defendant's refusal to provide a refund also forces its customers to bear the expense of its mistakes and malfeasance.

16.     In addition to its lack of concern for the safety of its customers, Defendant breached implied warranties and engaged in unfair, deceptive and/or fraudulent business practices.

17.     As a result of Defendant's conduct, owners of the Oven, including Plaintiff, have suffered an ascertainable loss of money, and/or property, and/or loss in value. Consumers impacted by the Defect are forced to expend time to furnish the Oven for repair and lose the use of the Oven while it is being repaired.

18.     To make matters worse, customer complaints reveal that Defendant simply replaces the defective windows with parts containing the same Defect. Indeed, Defendant's sole solution to this dangerous defect has been, for some consumers, the ineffective replacement of Ovens which manifest the Defect, with Ovens that have no guarantee to be free of the Defect, and in fact still contain the Defect. Several consumers have reported the Defect manifesting on replacement Ovens, rendering Defendant's "remedy" hollow. Accordingly, Plaintiff and the Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Defendant's conduct.

19.     Meanwhile, Defendant continues to unjustly enrich itself by selling the Oven with no warning of the Defect.

20.     Had Defendant disclosed the Defect, Plaintiff and the Class members would not have purchased the Oven or would have paid less for it.

21.     Plaintiff demands that Defendant accept responsibility for the Defect by refunding the full purchase price. In addition, or alternatively, Defendant should be required to buy back the Oven.

22.     This case seeks relief for the harm owners of the Oven have suffered, as well as protection from the safety risks resulting from Defendant's breaches of implied warranties and Defendant's unfair, unlawful, and deceptive trade practices. Simultaneously, this case presents an equitable claim of unjust enrichment.

## JURISDICTION, VENUE, AND GOVERNING LAW

23.     Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and (6), this Court has original jurisdiction. The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs. Moreover, there is complete diversity of the parties as the Plaintiffs and Defendant are citizens of different states.

24.     This Court has personal jurisdiction over this action because Defendant Breville is a California corporation.

25.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant Breville resides within this District.

26.     Plaintiff is informed and believes, and thereon alleges, that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, Defendant.

## PARTIES

27.     Plaintiff Christina Key is a resident of Douglas City, California. She purchased her Oven in the spring of 2021 in San Francisco, California. The glass in her Oven shattered the second time she used it.

28.     Defendant Breville USA, Inc. is a California corporation, with its principal place of business located at 19400 South Western Avenue, Torrance, CA 90501 United States. Breville, USA Inc., from its California facilities, is solely responsible for the importation, distribution, marketing, warranty service, and sale of Breville products in the United States.

29.     Breville USA, Inc.'s C-Suite, executives, and employees responsible for the development, distribution, marketing, sales, customer service, and warranty servicing of Breville products are located at the company's Torrance, California headquarters. As detailed herein, the decisions regarding the marketing and sale of the Oven, warranty service and any remedies, as well as

decisions regarding the disclosure or non-disclosure of the Defect were in whole or substantial part made by Breville USA, Inc. at its California headquarters.

## FACTUAL ALLEGATIONS

### a. Common Allegations

30.     Defendant holds itself out as a manufacturer of "high end kitchen & cooking appliances", implying its products are of superior quality, durability, and function.[3] With respect to its line of Smart Ovens, for which the Oven at issue was its flagship model for several years, Defendant hallmarks its quality and superiority by stating, "Our food specialists and chefs have spent thousand [sic] of hours in research and testing to ensure the Smart Oven range offers incredible versatility and precision, giving you greater control of your toasting, roasting and more."[4]

31.     The Oven is marketed and sold as a multi-functional countertop convection oven with an array of features. Its functions include, among other things, air frying, broiling, baking, roasting, and dehydrating. It weighs nearly 40 pounds and has interior dimensions of a cubic foot—large enough to hold a 14-pound turkey or five-quart Dutch oven. Food preparation also occurs more quickly in the Oven relative to a traditional oven because its fan system circulates heat. Given the capacity and robust functionality, the Oven can and does act as a replacement for a full-sized oven for many consumers. Indeed, the Oven's hefty price tag of up to $399.95 on Defendant's own website nears what consumers would pay for a large, freestanding oven. As such, the Oven is a product that bridges the gap between cheap countertop toaster ovens and full-size, multifunctional ovens. Over at least the last five years, Defendant designed, manufactured, warranted, advertised, and sold the Oven to thousands of consumers throughout the United States.

32.     On its website and the websites of its authorized retailers, such as Bed Bath & Beyond and Best Buy, Defendant touts the superiority and functionality of the Oven, stating "not all superheroes

---

[3] https://www.breville.com/us/en/home/index.html.
[4] https://www.breville.com/us/en/smart-ovens/our-smart-ovens-story.html.

wear capes."[5] [6] Defendant in another video further advertises that the Oven is "a super powered oven that never tires…always rises to the occasion…conquers the night…saves the day…makes the impossible look easy, and the everyday extraordinary."[7] Defendant heralds the Oven as part of "the worlds most awarded ovens."[8]

33.    The first page of the manual for the Oven touts the safety of Breville products, including the Oven stating, "At Breville we are very safety conscious.  We design and manufacture consumer products with the safety of you, our valued customer, foremost in mind."[9]

34.    As part of its design, the Oven features a glass window that allows the user to view the progress of the food items being prepared.

35.    This window is predisposed to burst when the Oven is in use, sending shards of burning hot glass flying without warning or action on the part of the user.

36.    In addition to the safety concerns caused by the Defect, the bursting of the glass window makes it impossible to keep hot air from escaping and cooler outside air from entering the oven, frustrating the Oven's essential heating function. As a result, the manifestation of the Defect renders the Oven inoperable.

37.    The Defect is caused by common failures in material and/or workmanship. Specifically, the glass in the Oven contains the inorganic compound nickel sulfide, a compound that remains stable at low temperatures but that can become volatile at higher temperatures. Nickel sulfide enters the glass as an undesired impurity that is introduced during the manufacturing process. As temperature is added to the nickel sulfide elements of the glass, these elements expand in volume, causing the glass to fracture.

38.    Glass that contains nickel sulfide impurities normally fractures according to a typical "butterfly" or "scalloped" pattern, created by intersecting polygonal sections that are themselves created by the fracture of the glass around the nickel sulfide inclusions. An example is shown in this diagram:

---

[5] https://www.breville.com/us/en/products/ovens/bov900.html (embedded video located at https://youtu.be/jbNxNbPF1wQ ).
[6] https://www.bestbuy.com/site/breville-smart-oven-air-fryer-pro-convection-toaster-pizza-oven-stainless-steel/5850410.p?skuId=5850410.
[7] https://www.bedbathandbeyond.com/store/product/breville-smart-oven-air-fryer-pro/1060538871.
[8] *Id*.
[9] https://assets.breville.com/Instruction-Booklets/USCM/BOV900_USCM_IB_K21_LR.pdf.



39.     As reflected *infra*, this signature pattern of nickle-sulfide induced glass fracturing occurs in the photographs submitted by defrauded consumers who bought Breville's defective Oven.

40.     As discussed above, the Oven's expense, internal capacity, and functionality make it akin to a larger, traditional oven, and therefore should have an expected service life in the range of thirteen years.[10] However, the Oven is prone to premature failure before the end of its expected service life due to the Defect.

41.     The Defect is also invisible until it has manifested, making it impossible for consumers to identify the Oven as defective prior to purchase.

**b. Plaintiff Key's Allegations**

42.     On or around Spring 2021, Plaintiff Christina Key purchased the Oven from the Williams Sonoma.

43.     Plaintiff purchased the Oven for her personal use to use in various food preparations. She was initially impressed by the Oven's multifunctionality, convenience, and its association with a well-regarded brand such as Breville.

44.     Prior to purchasing her Oven, Plaintiff Key researched different countertop ovens and considered the quality, reliability, and durability of the manufacturer. Prior to purchasing the Oven, Plaintiff Key viewed multiple advertisements from Breville, including internet advertisements, which

---

[10] *See* https://www.ahs.com/home-matters/repair-maintenance/lifespan-of-modern-home-appliances/ (last visited September 22, 2022) (average lifespan of electric range is 13 years).

1  were created and disseminated from California, touting Breville countertop ovens' reliability, durability,

2  and superiority over competitive offerings.

3       45.    At no point, in either researching Ovens, at the point of sale or otherwise did Breville

4  disclose the Defect to Plaintiff Key.

5       46.    Immediately after receiving her Oven, Plaintiff Key reviewed the Oven box and the

6  documents included inside the box.  Neither of these sources disclosed the Defect to Plaintiff Key.

7       47.    The second time Plaintiff Key used her Oven, the Oven's glass spontaneously exploded.

8       48.    Plaintiff Key did not receive the benefit of her bargain. Plaintiff Key purchased a

9  countertop oven that is of a lesser standard grade, and quality than represented, and she did not receive a

10  countertop oven that met ordinary and reasonable consumer expectation regarding safe and reliable use.

11  The Defect has significantly diminished the value of Plaintiff Key's Oven and had rendered it unfit for

12  its particular use.

13      49.    Plaintiff Key is interested in and would purchase another countertop oven from

14  Defendant if she was assured the defect was fixed and would not reoccur.

15          **c.  Defendant Had Superior and Exclusive Knowledge of the Defect.**

16      50.    Defendant knew or should have known when it sold the Oven to the public that the Oven

17  suffered from the Defect, was unsafe, could not be expected to function properly for the full duration of

18  its expected useful life, presented an unreasonable risk that the glass would shatter, and presented an

19  unreasonable and significant risk of personal injury and/or property damage to consumers and the

20  public.

21      51.    Manufacturers have known since at least the 1960s that the inclusion of nickel sulfide in

22  tempered glass can cause the glass to shatter at high temperatures. The inclusion of this impurity occurs

23  during the manufacturing process—often through exposure to machinery and manufacturing

24  components that contain nickel, which combines with atmospheric sulfur discharged from the fuel or gas

25  used for heating. Defendants were at all times aware that these elements of the manufacturing process

26  can introduce nickle sulfide into the Ovens' glass, which would cause the glass to shatter when exposed

27  to higher temperatures in the course of ordinary use.

52.     Defendant's knowledge is also demonstrated by their receipt of voluminous consumer complaints, including several years' worth of public internet posts regarding the glass window of the Oven shattering during normal use. Despite years of customer complaints—including those found on its own website—Defendant has failed to act to remedy or eliminate the Defect in the Oven or remove it from the stream of commerce.

53.     Defendant's website allows shoppers to purchase appliances and review feedback from previous purchasers. Defendant's awareness of this review platform is made evident by the "Response[s] from Breville" to assorted reviews.[11] Below are several customer complaints regarding the Oven found on Defendant's own website. Examples of the customer complaints, which highlight the pervasiveness of the issue and the safety implications of the defective Oven, are reproduced below.





[11] https://www.breville.com/us/en/products/ovens/bov900.html?sku=BOV900BSSUSC



54.     Customers also flagged the Defect in the review section of Defendant's amazon.com store.[12] Below are examples of these complaints, which often are accompanied by images of the defective Oven.



---

[12] https://www.amazon.com/product-reviews/B01N5UPTZS/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar (last visited May 12, 2022)

1

2

3

4

5

6

7

8

9

10

11

12

13



14

15

16

17

18

19

20

21

22

23

24

25

26

27





 Leigh Tanner

⭐☆☆☆☆ **BUYER BEWARE! GLASS SHATTERED ON FIRST USE!**

Reviewed in the United States on May 19, 2019

Style: New | **Verified Purchase**

We have owned a Breville toaster oven for over 8 years and it has worked great for us. We decided to upgrade to the larger model and on the first use on Toast Mode the glass shattered all over the kitchen. Thankfully my kids and I were not near it when it happened.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21
22
23
24
25
26
27

SAFETY HAZARD!!! BUYER BEWARE!!!!

I could not wait to get this toaster oven because I had been wanting it for a long time but couldn't find myself paying $400 for a toaster. My fiancé finally decided to buy it when it went on sale for Black Friday 2020. Everything was great because the only thing we would use it for was toasting our bread and sandwiches. Well last night we decided to try out the air fryer function for the very first time and the tempered GLASS literally EXPLODED!!!!!!!! My fiancé and I were only about two feet to the left away from it otherwise it could have been detrimental!!! I can't even begin to think about the "what if's"!!! I have two little nephews that were over the night before and I'm just thankful to God that they were not visiting me last night because I did invite them over with my sister to come try the fried chicken! After it exploded, I started seeing the reviews and this is an ongoing issue that has been happening! Shame on Breville for allowing this product to still be on the shelves and not recalling it!!!! It could really hurt someone if they don't fix this issue!



 Rima K

⭐☆☆☆☆ **Disappointed**

Reviewed in the United States on July 30, 2020

Style: New   |   **Verified Purchase**

This is my second Breville. The first one just quit working (again about 6 months, thought it was a fluke) and this one had the glass explode while cooking dinner! the irony is WHEN it works I love it. But just 8 months this time and well, you see the results in the picture. my sister was 1 foot away and it scared the crap out of her. I was in the bedroom and heard it explode.

I will be curious to see if Breville pays attention to these reviews



 **Lynn Johnson**

⭐☆☆☆☆ **Do not purchase this item...it is dangerous!**

Reviewed in the United States on December 9, 2021

Style: New  |  **Verified Purchase**

This machine exploded on my counter top only two months after purchase. The support center said it did not have enough ventilation, but there was a foot clearance all around the product at the time of the explosion. Luckly no one was near the unit when this occurred as glass was all over the floor in an 8 foot radius. Very poor customer service and after 3 months of promising to send another replacement....nothing has arrived and when you call, you are put on hold for 30-60 minutes. But wait....there is more... after holding, the call is randomly (conveniently) dropped so you have to start all over again. I have only been able to talk to them one time. Buy this product at your own peril.



 **Judy Davis**

⭐☆☆☆☆ **Unsafe - glass shatters**

Reviewed in the United States on October 19, 2019

Style: New  |  **Verified Purchase**

The first one we received from Amazon was promptly replaced by Breville when the glass exploded after 1 month of sporadic use. As a long time consumer of Breville products we thought it was a random incident. The same thing happened with this one - not quite an explosion but the glass shattered again - this is not a safe product. Weeks have gone by and Breville has not responded - I am still trying to find a way to return and get a refund.

⬤ **Linda**

⭐☆☆☆☆ **Dangerous Defect!**

Reviewed in the United States on January 27, 2021

Style: New  |  **Verified Purchase**

Beware! Glass blew out of the door this evening ruining a portion of my dinner. First time we used the "roast" feature. There is glass on the floor, on the counter in front of it and inside the oven. Now that I look at the reviews there should be a recall. All the pictures where glass has broken including my own show the top portion of the glass missing. It doesn't just crack, the glass blows out. Multiple time I have turned on the oven light to look closely at what was in the oven to check for progress of food and I can't imagine what my face and eyes would look like had this happen when I was looking closely at what I was cooking through the window. This has to be a known defect with Beville. We may contact consumer affairs.

1
2
3
4
5
6
7
8
9
10



11
12
13
14

 mom10000

★☆☆☆☆  Sad it broke!
Reviewed in the United States on July 26, 2021
Style: New  |  Verified Purchase
We had this for less than 2 months and the glass shattered while we were cooking dinner! Hopefully breville will replace.

15
16
17
18
19
20
21



22
23
24
25
26
27

 Naomi Young

★☆☆☆☆  Your Breville may explode!
Reviewed in the United States on December 5, 2020
Style: New  |  Verified Purchase
Buyer beware! I purchased this smart oven due to its popularity and many functions. A few weeks after purchase, the front glass exploded while in air fry mode. Luckily, me and my kids weren't in the kitchen because glass flew everywhere! According to the internet, this happens to others as well and not an isolated case. Working with Breville to get a replacement has also been a nightmare because they don't respond back even after emailing and leaving requests on their website.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



aeap

⭐☆☆☆☆  **Glass shattered third time using**

Reviewed in the United States on December 6, 2019

Style: New | Verified Purchase

I unboxed this item as stated and setup, as stated. Third time I used this, the front glass completely shattered. Cleaned up the mess and got rid of the item as I have small kids at home and contacted Breville. Will see what they say. For now, I would highly recommend NOT purchasing this product.

21 people found this helpful



David Reyes

⭐☆☆☆☆  **No good**

Reviewed in the United States on January 13, 2019

Style: New | Verified Purchase

First I was so excited! It was perfect for us, we have this for less thank 2 months and i was cooking chicken legs and literally exploded braking the glass and it was very scary I had my kids around thanks God they didn't suffer any injuries, I'm putting the pictures!



 gail

⭐☆☆☆☆ **Door shattered while in bake mode**

Reviewed in the United States on July 8, 2019

Style: New | **Verified Purchase**

We had this oven LESS THAN two months. It was great and very useful for baking, air frying, and warming. I was very pleased with my choice and my investment. I was 18 minutes in to a 20 minute bake cycle yesterday when I heard a loud POP. I was across the kitchen. The glass door on the oven shattered. Amazon only has a 30 day return policy on this item. I am double that time frame. I am left to deal with Breville direct now. Oven door was never bumped, nothing was ever placed on it. I read and followed all their instructions. I have been babying this machine. So disappointing.

 YRCZYMYCZY

⭐☆☆☆☆ **Front Glass Exploded Out During Normal Cooking**

Reviewed in the United States on October 8, 2020

Style: New | **Verified Purchase**

This oven worked pretty well for us for about a year. Shortly after the 1 year warranty expired, the front glass exploded out while a normal cook of a frozen pizza. This was very disappointing. We've taken excellent care of the oven and hoped it would last at least 4 or 5 years!

14 people found this helpful

 aryxus

★☆☆☆☆  **This oven explodes in a shower of glass.**
Reviewed in the United States on June 19, 2019
Style: New  |  **Verified Purchase**

We've been using this oven for less than 3 weeks, and today it exploded while roasting an onion. Doesn't really matter how easy to use or how big it is if it's just going to explode on you.

So, I guess the salient takeaway from this review is that this oven explodes. If you don't want your ovens exploding, try a different brand.



 Dominic G.

★☆☆☆☆  **Oven exploded**
Reviewed in the United States on April 28, 2020
Style: New  |  **Verified Purchase**

Bought 8 months ago. Tonight air frying chicken the glass door exploded outwards and shot glass all over my kitchen. The oven was 12-15 minutes into a cooking cycle and I was across the kitchen when it happened. Nobody was near the oven fortunately. Cooking temp was only 385. I'll see how Breville deal with this when no the customer service comes on line tomorrow. Huge disappointment after paying top dollar for "the best" ?

12 people found this helpful

Leora

★☆☆☆☆  **Disappointed**
Reviewed in the United States on August 3, 2019
Style: New  |  **Verified Purchase**

The glass on the door shattered (exploded) while using the oven the second day i got it. I made sure it had at least 6 inches from the back wall, sides, and top while in use.

17 people found this helpful

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

 Dustyjob

⭐☆☆☆☆ **WORTHLESS PIECE OF JUNK ... SAVE YOUR MONEY!!**
Reviewed in the United States on December 27, 2019
Style: New   |   Verified Purchase

After five months of use, the glass oven door shattered! Unfortunately, it's beyond return time for
Amazon and Breville doesn't do refunds unless purchased from them. So, I am getting a replacement
that I am worried about using and having this piece of garbage blowing up in my face. No more
Breville products for me!!!!!

7 people found this helpful

velvul

⭐☆☆☆☆ **Only worked for 4 days**
Reviewed in the United States on January 31, 2019
Style: New   |   Verified Purchase

On day 4, during preheating to preset 425 degree, the glass burst out all around the kitchen. Luckily
there were no kids around at that time, could be much worse. No more Breville oven for me!



 Nina K.

⭐☆☆☆☆ **Exploding glass**
Reviewed in the United States on January 3, 2022
Style: New   |   Verified Purchase

Toasting a piece of toast and the glass in the oven door exploded. Very dangerous!!!
And a mess to clean up.
I do not recommend this oven.



 **Amazon Customer**

⭐☆☆☆☆ **Returned**

Reviewed in the United States on February 11, 2020

Style: New | **Verified Purchase**

After only 6-8 uses the glass on the door shattered and fell out- extremely disappointed- it is on its way back

9 people found this helpful

Helpful | Report abuse

---

 Michael D. Ames

⭐☆☆☆☆ **Glass explodes on first warm up!!! UPDATE 2nd one shatters on April 1 2020.**

Reviewed in the United States on November 20, 2019

Style: New

After looking at reviews decided on spending the extra money and getting what we thought was the top of the line air fryer etc. oven. Was so excited to use it and following the instruction book did the first warm up to clean the elements. The oven preheated fine and about 5 min into the cycle exploded sending glass everywhere. I purchased this thru a different site called them and they are sending a new one. Not impressed with Breville!!!! Thankfully nobody was injured when the glass exploded.

The replacement unit was working ok until April 1 2020. I had put a frozen pizza in, which I had cooked before the same way and about 10 min into the cook the window blew!!!

The customer service for Breville was terrible but the company we had ordered from returned our money. We then purchased another brand at around 1/2 the price as this and we LOVE it!!!! It cooks lots better!!! Do not waste your money on this overpriced junk!!

---

Donna C

⭐☆☆☆☆ **Front Glass SHATTERED While Baking at just 375 degrees!**

Reviewed in the United States on March 15, 2019

Style: New

We bought this oven exactly a week ago and have used it daily. I loved it! The light, the air fryer ability, and the fact that you could use 2-3 racks at a time were great! However, I was just baking a potato today at 375 degrees. I heard a loud crash, and walked into the kitchen to see this. I'm thankful that no one was close to this when it happened!





**Nikki**

⭐☆☆☆☆ **Glass shattered**

Reviewed in the United States on December 2, 2019

Style: New

Was so excited , my boyfriend got this for me . Went to make wings and the glass shattered while cooking. I except more from a top named company.





**Suzanne**

⭐☆☆☆☆ **BEWARE - Glass shattered after 3 months**

Reviewed in the United States on January 19, 2021

Style: New

The oven had 6-9 inches ventilation space on all sides. Put pizza in to cook, left for a few minutes, came back to see glass everywhere.



 ThaiStick

★☆☆☆☆ **Dangerous please be careful**
Reviewed in the United States on June 2, 2019
Style: New

Be careful the glass will shatter

 jojo zhang

★☆☆☆☆ **glass cracked after a week**
Reviewed in Canada on September 9, 2020
Style: New  |  Verified Purchase

It worked very well before, but one week later, when I cooked a sausage this morning the glass exploded. the temperature was at 405 for 5 minutes .



55.     In addition to the customer complaints lodged with Defendant's authorized retailers and with the CPSC, upon information and belief, Defendant's customer service division regularly receives and responds directly to customer calls and emails concerning product defects, including specifically, the Defect at issue.

56.     Based upon the substance of these customer complaints submitted to its retailers, directly to Defendant's customer service representatives, and with the CPSC, Defendant has been aware of the Defect and the extreme risk of safety it posed to consumers since at least 2018.

57.     Because of its knowledge of the Defect, Defendant has a duty to disclose the Defect and to not conceal it from consumers. Defendant's failure to disclose, and/or active concealment of, the serious safety Defect places Plaintiff and the public at an unreasonable and unnecessary risk of personal injury and/or property damage.

58.     Defendant still markets and sells the Oven, still conceals the existence of the Defect, still fails to notify consumers of the Defect and its safety implications, and still fails to recall the Oven.

59.     When Defendant repairs the Oven after the glass breaks or shatters, it fails to properly attribute the failure to the Defect, and merely replaces the defective glass door with an identical, equally defective part, which does not prevent the recurrence of the issue.

60.     Another ineffective remedy has been for Defendant to replace the Oven with a unit still containing the Defect. Indeed, one such member of the Class stated that, "The first [Oven] we received

from Amazon was promptly replaced by Breville when the glass exploded after 1 month of sporadic use…The same thing happened with this one – not quite an explosion but the glass shattered again – this is not a safe product."[13] Another class member reported that. "The oven preheated fine and about 5 min into the cycle exploded sending glass everywhere…The replacement unit was working ok until April 1, 2020…The oven preheated fine and about 5 min into the cycle exploded sending glass everywhere."[14]

61.     Indeed, despite Defendant's knowledge of the Defect and its serious safety risk and potential for grave personal injury, several class members have reported that Defendant often blames the consumer for the cause of the defect. One class member reported that when he contacted Defendant to complain of the explosion, rather than assist him, "The support center said that [the Oven] did not have enough ventilation, but there was a foot clearance all around the [Oven] at the time of the explosion."[15] Another class member reported that when the glass exploded on his Oven after a year of ownership, "Customer service offered to sell me another for a discounted price after treating me like it was my fault this happened."[16] Yet another class member reports that her Oven exploded after running its first pre-heat cycle as instructed. When she contacted Defendant's customer service department to report the "dangerous incident, the representative informed [her] that the shattered glass was caused by the weather."[17]

d.   **Fraudulent Omission/Concealment Allegations**

62.     Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals employed by Defendant responsible for making false and misleading statements regarding the Oven.  Defendant necessarily is in possession of

---

[13] https://www.amazon.com/gp/customer-reviews/R2STVHFH26JFUS/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B01N5UPTZS.
[14] https://www.amazon.com/gp/customer-reviews/R3ECPB1HT6O1QG/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B01N5UPTZS.
[15] https://www.amazon.com/gp/customer-reviews/R2H0HVW5X8ESTX/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B01N5UPTZS
[16] https://www.amazon.com/gp/customer-reviews/R3KLRQNXX0YGKM/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B01N5UPTZS
[17] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3549048

all this information. Plaintiffs' claims arise out of Defendant's fraudulent omission/concealment of the Defect, despite its representations about the quality, reliability, and safety of the Oven.

63.     Plaintiffs allege that at all relevant times, including specifically at the time they and the class members purchased their Ovens, Defendant knew, or were reckless in not knowing, of the Defect; Defendant had a duty to disclose the Defect based upon exclusive knowledge; and Defendant never disclosed the Defect to Plaintiffs or the public at any time or place in any manner.

64.     Plaintiffs make the following specific concealment/omission-based allegations with as much specificity as possible absent access to the information necessarily available only to the Defendant:

65.     **Who**: Defendant actively concealed and omitted the Defect from Plaintiffs and class members while simultaneously touting the superiority, durability, quality, and safety of the Oven, as alleged herein.  Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those individuals responsible for such decisions.

66.     **What**: that the Oven contains the Defect, as alleged herein.  Defendant concealed and omitted the Defect while making representations about the superiority, durability, quality, safety, and other attributes of the Oven, as alleged herein.

67.     **When**: Defendant concealed and omitted material information regarding the Defect at all times while making representations about the superiority, durability, quality, and safety of the Oven on an ongoing basis, and continuing to this day.  Defendant still has not disclosed the truth about the Defect in the Oven.  When consumers contacted Defendant's customer service department and complained about the Defect, Defendant denied any knowledge of or provided an adequate repair for the Defect.

68.     **Where**: Defendant concealed and omitted material information regarding the true nature of the Defect in every communication they had with Plaintiffs and class members and made representations about the superiority, durability, quality, and safety of the Oven.  Plaintiffs are aware of no document, communication, or other place or thing, in which Defendant disclosed the truth about the full scope of the Defect in the Oven.  Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Defendant's websites or the

websites of Defendant's authorized retailers.  There are channels through which Defendant could have disclosed the Defect, including, but not limited to, point of sale communications; the owner's manual, the Defendant's website; and/or direct communications to class members through means such as e-mail notifications.

69.   **How**: Defendant concealed and omitted the Defect from Plaintiffs and class members and made representations about the superiority, durability, quality, and safety of the Oven.  Defendant actively concealed and knew that information about the Defect would be important to a reasonable consumer, and Defendant promised in its marketing materials that the Oven had qualities it did not have.

70.   **Why**: Defendant actively concealed and omitted material information about the Defect I the Oven for the purpose of inducing Plaintiffs and class members to purchase the Oven, rather than purchasing competitors' countertop oven, and made representations about the superiority, durability, quality, and safety of the Oven.  Had Defendant disclosed the truth, for example, in their advertisements or other materials or communications, Plaintiffs and class members (all reasonable consumers) would have been aware of it and would not have bought the Oven or would have paid as much for them.

## CALIFORNIA LAW APPLIES TO THE NATIONWIDE CLAIMS

71.   California law applies to Plaintiffs' nationwide claims because Plaintiffs' injuries emanate from Defendants' actions in California. Each pertinent decision related to the decision to conceal the Defect from class members, including the marketing, commercial distribution, customer service, and/or warranty claim process for the Oven in the United States, was made from Defendant's California headquarters by its respective executives and employees located in California.

72.   Defendant is headquartered in Torrance, California and is the sole entity in the United States responsible for marketing, distributing, selling, and warranting the Oven.

73.   Defendant maintains its C-Suite, and its distribution, marketing, customer relations, and warranty departments in its Torrance, California headquarters.

74.     Additionally, Defendant's "Breville Service Center" and its "consumer support team", which handles customer complaints and warranty repairs for Oven owners, is located in Torrance, California.[18]

75.     Upon information and belief, Defendant's website is managed by Defendant's marketing and customer service departments located in Torrance, California.

Accordingly, the wrongful conduct which gives rise to the claims in this action emanated and occurred in California.

## CLASS ALLEGATIONS

76.     Plaintiff brings this action individually and as representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of the individuals in the below-defined classes (collectively, the "Class Members"):

**Nationwide Class:**
During the fullest period allowed by law, all persons residing in the United States who own or owned the Oven (the "Nationwide Class").

**California Subclass:**
During the fullest period allowed by law, all persons residing in the State of California who own or owned the Oven (the "California Subclass").

77.     Specifically excluded from these definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

78.     Plaintiff seeks only damages and equitable relief on behalf of herself and the putative Classes. Plaintiff disclaims any intent or right to seek any recovery in this action for personal injuries or emotional distress suffered by Plaintiff and/or putative Class Members.

79.     Plaintiff reserves the right to modify the class definitions, if necessary, to include additional appliances with the same Defect.

---

[18] https://assets.breville.com/Instruction-Booklets/USCM/BOV900_USCM_IB_K21_LR.pdf.

80.     **Numerosity**: Class Members are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of thousands of people geographically disbursed throughout the United States. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. Class Members are readily identifiable from information and records in the possession of Defendant and its authorized distributors and retailers.

81.     **Commonality**: Common questions of law and fact exist as to all Class Members. These questions predominate over questions that may affect only individual Class Members because Defendant acted on grounds generally applicable to all Class Members. Such common legal or factual questions include, inter alia:

(a) Whether the glass used in the Oven is defective;

(b) Whether the Oven has a flaw in materials and/or workmanship;

(c) Whether Defendant knew or reasonably should have known about the defective glass used in the Oven prior to distributing and selling the Oven to Plaintiff and Class Members;

(d) Whether Defendant knew or reasonably should have known about the defective glass used in the Oven after distributing and selling the Oven to Plaintiff and Class Members;

(e) Whether Defendant concealed from and/or failed to disclose to Plaintiff and Class Members that defective glass is used in the Oven;

(f) Whether Defendant breached the implied warranty of merchantability

(g) Whether Defendant breached express warranties relating to the Oven;

(h) Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

(i) Whether Defendant should be enjoined from selling and marketing the defective Oven; and

(j) Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective Oven.

82. **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of Class Members. She has no interests antagonistic to those of Class Members. Plaintiff retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

83. **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the defective glass at issue. Plaintiff has standing to make this claim because she would purchase another Oven provided that the common Defect is fixed going forward. Defendant acted and refused to act on grounds that apply generally to the Class Members, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Nationwide Class and California Subclass as a whole.

84. **Predominance and Superiority**: Plaintiff and Class Members all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of their individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

85. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

86. Defendant acted or refused to act on grounds generally applicable to the Nationwide Class and California Subclass, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the classes appropriate.

1

### ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

2

3

87.    Defendant possessed exclusive knowledge about the Defect, which is unavailable to Plaintiff and the Class Members.

4

5

6

88.    Throughout the time period relevant to this action, Defendant concealed the nature of the Defect. As a result, neither Plaintiff nor the absent Class Members could have discovered the Defect, even upon reasonable exercise of diligence.

7

8

9

10

89.    Despite its knowledge of the above, Defendant (a) failed to disclose, (b) concealed, and (c) continues to conceal critical information relating to the Oven's defective glass windows, even though, at any point in time, it could have communicated this material information to Plaintiff and the Class Members through individual correspondence, media releases, or other means.

11

12

13

90.    Plaintiff and Class Members relied on Defendant to disclose the dangerous Defect because the flawed nature of the Oven's glass window could not be discovered through reasonable efforts by Plaintiff and the Class Members.

14

15

16

91.    Thus, the running of all applicable statutes of limitations have been suspended with respect to any claims that Plaintiff and the Class Members have against Defendant as a result of Defendant's misrepresentations and omissions, by virtue of the fraudulent concealment doctrine.

17

18

19

20

21

22

23

92.    Defendant was under a continuous duty to Plaintiff and Class Members to disclose the true nature, quality, and character of its Oven. However, Defendant concealed the true nature, quality, and character of the Oven, as described herein. Defendant knew of the Defect for years but concealed it and/or failed to alert purchasers or potential purchasers. Defendant maintained exclusive control over information concerning the glass used in the Oven. Based upon the foregoing, Defendant is estopped from relying on any statutes of limitation or repose that might otherwise apply to the claims asserted by Plaintiff herein in defense of this action.

24

25

### COUNT I
### Breach of Implied Warranties
### (On Behalf of Plaintiff and the Classes)

26

27

93.    Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

94.     Defendant is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Oven. Defendant knew or had reason to know of the specific use for which the Oven, as a good, is purchased.

95.     Defendant entered into agreements with retailers and suppliers to sell its Oven to Class Members.

96.     Defendant provided Plaintiff and Class Members with implied warranties that the Oven is merchantable and fit for the ordinary purposes for which it is used and sold and is not otherwise injurious to consumers.

97.     However, the Oven is not fit for its ordinary purpose of reliably and safely cooking and/or heating food. This is because, inter alia, the Oven contains defective glass-front windows which explode, preventing it from safely cooking and/or heating food without the risk of the glass shattering. This shattering glass could injure the consumer, damage the consumer's property, and taint the food that the consumer was attempting to cook and/or heat. In fact, once the glass breaks or shatters, the Oven is rendered entirely useless, as it cannot be used without an intact glass-window door to seal the Oven and keep the heat trapped within. For all these reasons, the Oven is not fit for its particular purpose of safely cooking and/or heating food.

98.     The Defect renders the Oven unsafe, unreliable, and unusable. Therefore, Defendant breached the implied warranty of merchantability.

99.     Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Retailers selling Defendant's products were not intended to be the ultimate consumers of the Oven and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer, making Plaintiff and Class Members the intended beneficiaries.

100.    Defendant's statements contained in its product literature, including the Oven's warranty, make it clear that Defendant intended that its warranties applied to Plaintiff and Class Members as third-

party beneficiaries.[19] Likewise, it was reasonably foreseeable that Plaintiff and consumer Class Members would be the intended beneficiaries of the Oven and warranties.

101. Defendant impliedly warranted that the Ovens were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that the Oven manufactured, supplied, distributed, and/or sold by Defendant was safe and reliable for heating and/or cooking food; and (ii) a warranty that the Oven would be fit for its intended use while it was being operated.

102. Contrary to the applicable implied warranties, the Oven, at the time of sale and thereafter, was not and is not fit for the ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe methods of heating and/or cooking food. Instead, the Oven suffers from a defective design and/or manufacture, as alleged herein.

103. Defendant's sale of defective and dangerous appliances and failure to provide a refund caused the implied warranty to fail in its essential purpose.

104. Defendant breached the implied warranties because the Oven was sold with the Defect, which substantially reduced and/or prevented it from being used for safe food preparation.

105. Defendant was put on constructive notice about its breach through its review of consumer complaints described herein, complaints on Defendant's own website, and upon information and belief, through product testing. Any efforts to limit the implied warranties in a manner that would exclude coverage of the Oven is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Oven is null and void.

106. As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

107. Defendant's actions, as complained of herein, breached the implied warranty that the Oven was of merchantable quality and fit for use.

---

[19] *See* https://www.breville.com/us/en/support/warranty.html (last visited Apr. 19, 2022).

## COUNT II
### Violation of the Magnuson-Moss Warranty Act
### 15 U.S.C. § 2301(3)
### (On behalf of the Nationwide Class)

108.    Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

109.    Plaintiff and Nationwide Class Members are "consumers" as defined in 15 U.S.C. § 2301(3).

110.    Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

111.    The Oven is a "consumer product[]" as defined in 15 U.S.C. § 2301(1).

112.    Defendant extended an implied warranty to Plaintiff and Nationwide Class Members by operation of 15 U.S.C. § 2301(7), and this implied warranty covers the Defect in its Oven.

113.    Defendant breached this implied warranty by selling a defective Oven that was neither merchantable nor fit for its intended purpose.

114.    As a direct and proximate result of Defendant's breach of the implied warranty under the Magnuson-Moss Act, Plaintiff, and the Nationwide Class, have been damaged in an amount to 'be proven at trial.

## COUNT III
### Violation of California's Unfair Competition Law (the "UCL")
### Cal. Bus. & Prof. Code § 17200, *et seq.*
### (On Behalf of the California Subclass)

115.    Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

116.    Plaintiff brings this cause of action on her own behalf and on behalf of the members of the California Subclass.

117.    The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

### Unlawful Conduct

118.    Breville's conduct is unlawful, in violation of the UCL, because it violates the Consumers Legal Remedies Act, the Song-Beverly Act, and California's False Advertising Law.

119.    Breville's conduct is unfair in violation of the UCL because it violates California public policy, legislatively declared in the Song-Beverly Consumer Warranty Act, requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purpose. Breville violated the Song-Beverly Act because the Ovens are unfit for their most central purpose: to be used as a countertop oven with convection function.

120.    Breville acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner. Breville engaged in unfair business practices and acts in at least the following respects:

121.    Breville promoted and sold countertop ovens it knew were defective because they contain glass doors prone to explosion and are prone to catching fire;

122.    Breville promoted and sold countertop ovens with that are defective despite knowing that users do not expect the glass doors to spontaneously explode and the unit to catch fire;

123.    Breville failed to disclose that the Ovens are defective, and represented through advertising, its website, product packaging, press releases, and other sources that the Ovens possess particular qualities that were inconsistent with Breville's actual knowledge of the product.

124.    Breville made repairs and provided replacements that caused Plaintiff and California Subclass Members to experience repeated instances of failure, rendering the Limited Warranty useless.

125.    Breville failed to exercise adequate quality control and due diligence over the Ovens before placing them on the market; and

126.    Breville minimized the scope and severity of the problems with the Ovens, refusing to acknowledge that they are defective, failing to provide adequate relief to consumers, and suggesting to consumers that their aftermarket conduct resulted in the failure when Breville had actual knowledge of the true cause of the failure.

127.    The gravity of harm resulting from Breville's unfair conduct outweighs any potential utility. The practice of selling defective countertop ovens without providing an adequate remedy to cure

the Defect—and continuing to sell those countertop ovens without full and fair disclosure of the Defect—harms the public at large and is part of a common and uniform course of wrongful conduct.

128. The harm from Breville's conduct was not reasonably avoidable by consumers. The Ovens suffer from a latent defect, and even after receiving a large number of consumer complaints, Breville did not disclose the Defect. Plaintiff and the California Subclass did not know if, and had no reasonable means of discovering that, the Ovens were defective.

129. There were reasonably available alternatives that would have furthered Breville's business interests by satisfying and retaining its customers while maintaining profitability, such as: (1) acknowledging the Defect and providing a permanent fix; (2) adequately disclosing the Defect to prospective purchasers; (3) extending the warranty for the Breville countertop ovens; and (4) offering refunds or suitable non-defective replacement countertop ovens to consumers with defective countertop ovens.

**Fraud by Omission**

130. Breville's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer and:

131. Breville knowingly and intentionally concealed from Plaintiff and the California Subclass that the Ovens contain a latent defect that causes the glass door to explode; and

132. Breville volunteered information to Plaintiff and the California Subclass through advertising and other means that the Ovens – including the glass doors - were functional products without disclosing facts that would have materially qualified those partial representations; and

133. Breville promoted the high quality and versatile features of the Ovens, including the glass doors, despite knowing the Ovens are defective, and failed to correct its misleading partial disclosure.

134. Breville had ample means and opportunities to alert Plaintiff and the California Subclass of the defective nature of the Ovens, including on Breville's webpages; in its advertisements of the Ovens; on the Ovens' external packaging; and as part of the standardized Oven setup process. Breville uniformly failed to disclose that the Ovens are defective. Had Breville disclosed that the Ovens are defective, Plaintiff and the California Subclass would not have purchased an Oven, would not have

purchased a Oven at the prices they did, or would have returned their Oven during their respective buyer's remorse periods.

135.    Breville was under a duty to disclose the Defect because of its exclusive knowledge of the Defect before selling the Ovens stemming from its quality control and pre-release testing, complaints made directly to Breville, online complaints, and online reputation management would have put it on notice that the Ovens were not as advertised and because it made partial representations about the Ovens without disclosing the Defect.

136.    Plaintiff and the California Subclass suffered injury in fact, including lost money or property, as a result of Breville's unlawful, unfair, and fraudulent acts and omissions. Absent Breville's unlawful, unfair, and fraudulent conduct, Plaintiff and the California Subclass would not have purchased an Oven, would not have purchased a Oven at the prices they did, or would have returned their Oven for a refund during their respective buyer's remorse periods.

137.    Through its unlawful, unfair, and fraudulent conduct, Breville acquired money directly and as passed on by Breville's authorized resellers (i.e. Williams Sonoma, Amazon, Best Buy, etc.).

138.    Plaintiff and the California Subclass accordingly seek appropriate relief, including (1) restitution under the UCL and (2) such orders or judgments as may be necessary to enjoin Breville from continuing its unfair, unlawful, and fraudulent practices. Plaintiff also respectfully seeks reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure 1021.5.

**COUNT IV**
**Violation of California's Consumer Legal Remedies Act (the "CLRA")**
**Cal. Civ. Code § 1750, *et seq*.**
**(On Behalf of the California Subclass)**

139.    Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

140.    Plaintiff brings this cause of action on her own behalf and on behalf of the members of the California Subclass.

141.     Breville is a "person" within the meaning of California Civil Code sections 1761(c) and 1770 and provided "goods" within the meaning of sections 1761(a) and 1770.

142.     Breville's acts and practices, as alleged in this complaint, violate California Civil Code sections 1770(a)(5), (7) and (9) because they include unfair and deceptive acts and practices in connection with transactions—the sale of defective countertop ovens. In violation of the CLRA, Breville:

143.     Represented that the Ovens had characteristics, uses, and benefits they do not have;

144.     Represented that the Ovens are of a standard, quality, or grade when in fact they are not; and

145.     Advertised the Ovens with intent not to sell them as advertised.

146.     Through its design, development, and pre-release testing of the display, as well as through consumer complaints, Breville knew that the Ovens' glass doors were defective and prone to explosion.

147.     Breville was under a duty to disclose that the Ovens are defective because it had superior knowledge of the Defect—stemming from repairs, complaints made directly to Breville, online complaints, its quality control and pre-release testing, as well as online reputation management —and because it made partial, materially misleading representations about the Ovens' high quality and versatile features.

148.     Breville had ample means and opportunities to disclose to Plaintiff and the California Subclass that the Ovens are defective, including through advertisements, on external packaging, and during the Ovens' setup process. Despite its exclusive knowledge and opportunities to disclose the Ovens' defective nature, Breville failed to disclose the Defect to Plaintiff and the California Subclass either prior to purchase or before Plaintiff and the California Subclass' respective buyer's remorse periods expired.

149.     Breville's misrepresentations and omissions were material. Had Plaintiff and the California Subclass known that the Ovens were defective, they would not have purchased the Ovens,

would not have purchased them at the prices they did, or would have returned their Ovens during their respective buyer's remorse periods.

150.    Under California Civil Code section 1782(a), on their own behalf and on behalf of the Class, Plaintiff sent notices to Breville on September 9, 2020, via letter sent by Federal Express to Breville's principal place of business, advising Breville of its violations and that it must correct, replace, or otherwise rectify the goods alleged to be in violation. Breville failed to correct its business practices or provide the requested relief within 30 days. Accordingly, Plaintiff now seeks monetary damages under the CLRA.

151.    Plaintiff was injured by Breville's CLRA violations. As a result, Plaintiff is entitled to actual damages in an amount to be proven at trial, reasonable attorney's fees and costs, declaratory relief and punitive damages.

152.    In accordance with California Civil Code section 1780(d), Plaintiff's CLRA venue declarations are attached as Exhibit A to this complaint.

<u>**COUNT V**</u>
**Violation of California's Song-Beverly Consumer Warranty Act,**
**Cal. Civ. Code § 1792, *et seq*.**
**(On Behalf of the California Subclass)**

153.    Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

154.    Plaintiff brings this cause of action on her own behalf and on behalf of the members of the California Subclass.

155.    Plaintiff is a "buyer" within the meaning of California Civil Code section 1791(b). Plaintiff purchased an Oven in California.

156.    Breville is a manufacturer within the meaning of California Civil Code section 1791(j). Breville was responsible for producing the Ovens and directed and was involved in all stages of the production and manufacturing processes.

157.    The Ovens are a "consumer good[]" within the meaning of California Civil Code section 1791(a).

158.    Breville impliedly warranted to Plaintiff and the California Subclass that the Ovens purchased were "merchantable" under California Civil Code sections 1791.1(a) and 1792.

159.    Breville breached the implied warranty of merchantability by producing, manufacturing, and selling countertop ovens that were not of merchantable quality. The Ovens are defective, resulting in glass doors that spontaneously explode. As a result, the Ovens are unable to perform their essential function of a countertop oven with convection cooking functions. The Ovens are therefore unfit for the ordinary purpose for which a countertop oven is used and would not pass without objection in the countertop oven trade.

160.    The defect in the Ovens is latent. Though the Ovens appear operable when new, the Defect existed in the product at the time of sale and throughout the one-year Limited Warranty period. Accordingly, any subsequent discovery of the Defect beyond that time does not bar an implied warranty claim under the Song-Beverly Act.

161.    Any attempt by Breville to disclaim its implied warranty obligations under the Song Beverly Act is ineffective due to its failure to adhere to California Civil Code sections 1792.3 and 1792.4. Those sections provide that, in order to validly disclaim the implied warranty of merchantability, a manufacturer must 'in simple and concise language' state: "(1) The goods are being sold on an 'as is' or 'with all faults' basis. (2) The entire risk as to the quality and performance of the goods is with the buyer. (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair." Breville's attempted warranty disclaimer does not conform to sections 1792.3 and 1972.4.

162.    As a direct and proximate cause of Breville's breaches of the Song-Beverly Consumer Warranty Act, Plaintiff and the California Subclass members have been damaged in an amount to be proven at trial.

163.    Plaintiff seeks costs and expenses, including reasonable attorneys' fees, under California Civil Code section 1794.

## COUNT VI
### Violation of the Song-Beverly Consumer Warranty Act For Breach of
### Express Warranty
### Cal. Civ. Code §§ 1790-1795.8
### (On Behalf of the California Subclass)

164.    Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

165.    Plaintiff brings this cause of action on her own behalf and on behalf of the members of the California Subclass.

166.    Plaintiff and the California Subclass members who purchased the Ovens are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

167.    The Ovens are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

168.    Breville is a "manufacturer" of the Ovens within the meaning of Cal. Civ. Code § 1791(j).

169.    Breville made express warranties to Plaintiff and the California Subclass within the meaning of Cal. Civ. Code §§ 1791.2 & 1793.2(d).

170.    Breville breached these express warranties by selling defective Ovens that required repair or replacement. Plaintiff contacted Breville but was told that the Oven would not be replaced or covered under its warranty.

171.    Breville has failed to promptly replace or buy back the Oven of Plaintiff and the proposed California Subclass as required under Cal. Civ. Code § 1793.2(d)(2).

172.    Defendant's attempts to disclaim or limit the express warranty is unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the Defect.

173.    The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff and members of the Class. Among other things, Plaintiff and members of the Class had no meaningful choice in determining these time limitations, terms which unreasonably favor Defendant. A gross disparity in bargaining power existed between Defendant and Class members,

as only Defendant knew or should have known that the Ovens were defective at the time of sale and that the Ovens would fail well before the expiration of its useful life.

174. Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

175. Defendant was provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Defect became public.

176. Prior to the filing of this Complaint, Plaintiff sent Defendant a pre-suit notice letter concerning the Defect setting forth Plaintiff's experiences with the Defect and their intentions to file the instant Complaint alleging a breach of the implied warranty of merchantability on behalf of the Class or Subclass.

177. As a direct and proximate result of Breville's breach of its express warranties, Plaintiff and the California Subclass received goods in a condition that substantially impair their value to Plaintiff and the other Subclass members. Plaintiff and the California Subclass have been damaged as a result of, among other things, overpaying for the Ovens, the diminished value of the Ovens, the Ovens' malfunctioning, out-of-pocket costs incurred, and actual and potential increased maintenance and repair costs.

178. Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiff and the California Subclass are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the Ovens or the overpayment or diminution in value of their Ovens as well as reimbursement of out-of-pocket expenses incurred as a result of the Defect.

179. Pursuant to Cal. Civ. Code § 1794(d), (e) Plaintiff and the California Subclass are entitled to reasonable costs and attorneys' fees.

**<u>COUNT VII</u>**
**Violation of California's False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500,** ***et seq.***
**(On Behalf of the California Subclass)**

180.    Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

181.    Plaintiff brings this cause of action on her own behalf and on behalf of the members of the California Subclass.

182.    Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive class members and the public. As described above, and throughout this Complaint, Defendant misrepresented the Ovens and concealed the Defect.

183.    By its actions, Defendant disseminated uniform advertising regarding the Ovens into California. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*. Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

184.    The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive because it does not disclose the Defect—and how the Defect negatively affects consumers' experience with the Ovens by rendering the Ovens inoperable and an extreme safety risk.

185.    Defendant continued to misrepresent to consumers that its Ovens were reliable, durable, when, in fact, that was not the case as described in detail throughout this Complaint.

186.    In making and disseminating the statements alleged herein. Defendant knew, or should have known, its advertisements were untrue and misleading in violation of California law. Plaintiff and the California Subclass based their purchasing decisions on Defendant's omitted material facts. The revenue attributable to products sold in those false and misleading advertisements likely amounts to hundreds of millions of dollars. Plaintiff and the California Subclass were injured in fact and lost money and property as a result.

187.    The misrepresentations and non-disclosure by Defendant of the material facts described and details herein constitute false and misleading advertising and, therefore, constitute violations of Cal. Bus. & Prof. Code § 17500, *et seq.*

188.     As a result of Defendant's wrongful conduct, Plaintiff and the California Subclass lost money in an amount to be proven at trial. Plaintiff and the California Subclass are therefore entitled to restitution as appropriate for this cause of action.

189.     Plaintiff and the California Subclass seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure section 1021.5; injunctive relief; and other appropriate equitable relief.

### COUNT VIII
**Unjust Enrichment/Restitution**
**(On behalf of the Nationwide Class / Asserted in the Alternative on behalf of the California Subclass)**

190.     Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

191.     Defendant has been unjustly enriched as a result of the conduct described in this Complaint.

192.     Defendant received a benefit from Plaintiff and the members of the Nationwide Class and Pennsylvania Subclass in the form of payment for the Oven.

193.     Retention of these benefits by Defendant would be unjust and inequitable because Defendant received these benefits by engaging in the unlawful, unjust, and wrongful acts, omissions, and practices described in this Complaint.

194.     The benefits (or at least some portion the benefits) that Defendant received were not legitimately earned and came at the expense of Plaintiff and the other members of the Nationwide Class and California Subclass.

195.     Defendant knows that the Ovens can physically harm its customers, but nonetheless continues to sell them without warning.

196.     Defendant's conduct is unjust, inequitable, and wrongful, but systematically engages in this conduct anyway in order to gain unfair advantages and reap unearned financial benefits.

197.    There is no justification for Defendant's continued silence as customers purchased the defective and dangerous Oven.

198.    It is therefore against equity and good conscience to permit Defendant to retain the proceeds from their sales of the defective Oven.

199.    Plaintiff and the Nationwide Class are entitled to restitution and disgorgement of all amounts unjustly retained by Defendant, as well as other appropriate relief.

## COUNT IX
### Fraudulent Omission or Concealment
### (On behalf of the Nationwide Class / Asserted in the Alternative on behalf of the California Subclass)

200.    Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

201.    At all relevant times, Breville was engaged in the business of designing, manufacturing, distributing, and selling the Ovens.

202.    Breville, directly and through its representatives or agents, delivered Ovens to its distributors and various other distribution channels.

203.    Breville willfully, falsely, and knowingly omitted various material facts regarding the quality and character of the Ovens.

204.    Rather than disclose the Defect to Plaintiff and other prospective purchasers of Ovens, Breville concealed the Defect.

205.    Breville omitted and concealed this material information to drive up sales, maximize profits, and maintain its market power, as consumers would not purchase Ovens, or would pay substantially less for them, had they known the truth.

206.    Plaintiff and Class members could not have discovered the Defect prior to it manifesting in their Ovens.

207.    Breville was in exclusive possession of information concerning the Defect's existence, which would have been material to reasonable consumers, and thus was obligated to disclose the Defect to Plaintiff and Class members, at the point of sale or otherwise.

208.    Breville also had a duty to disclose because it made many general affirmative representations about the quality, warranty, functionality, and durability of the Ovens as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, functionality, and durability.

209.    Even when faced with complaints regarding the Defect, Breville often refused to acknowledge the issue. As a result, Class members were misled as to the true condition of the Ovens once at the time of purchase and often again when the Defect was complained of to Breville.  The omitted and concealed facts were material because they directly impact the value, appeal, and usability of the Ovens purchased by Plaintiff and Class members. Whether a manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose for which they were purchased, are material concerns to a consumer.

210.    Although Breville had a duty to disclose the Defect to consumers, it failed to do so.

211.    Plaintiff and Class members sustained injury at the time they purchased Ovens that suffer from the Defect, which Defendant failed to disclose and actively concealed from them. Had Plaintiff and the Class known about the Defect at the time of purchase, they would have paid substantially less for their Ovens, or would not have purchased them and avoided the significant out-of-pocket costs they have or will incur to repair or replace Ovens once the Defect manifests.

212.    Breville's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and well-being, and in part to enrich itself at the expense of consumers. Breville's acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration or competitor devices. Breville's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

**COUNT X**
**Declaratory Relief**
**(On behalf of the Nationwide Class / Asserted in the Alternative on behalf of the California Subclass)**

213.    Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

214.    Defendant has acted or refuses to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23.

215.    Plaintiff seeks a ruling that:

    a.    Ovens have defects that result in a glass doors exploding in ordinary use;

    b.    Any limitation of consumer rights in Defendant's warranty is void as unconscionable;

    c.    Defendant must notify owners of the Defect;

    d.    Defendant will reassess all prior warranty claims and pay the full cost of repairs and damages relating to the Defect; and

    e.    Defendant will pay the cost of inspection to determine whether any Class member's Ovens needs replacement due to the Defect.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff pray for judgement against Defendant as follows:

    a.    Entering judgment in favor of Plaintiff against Defendant;

    b.    Certification of the proposed Class and Subclass pursuant to Federal Rule of Civil Procedure 23;

    c.    Appointment of Plaintiff as Class Representative for the Class and Subclass;

    d.    Appointment of Plaintiff's counsel as Class Counsel;

    e.    A declaration that Breville violated the state statutes that form the basis for Plaintiff's primary statutory claims;

    f.    A declaration that Breville was unjustly enriched by its conduct as described herein;

    g.    A declaration that the limitations on Breville's warranties are unenforceable as set forth herein;

    h.    Monetary damages;

    i.    Statutory damages;

j.  Restitution;

k.  Injunctive relief;

l.  Disgorgement of all monies received by Breville as a result of the unlawful, unjust, unfair, and deceptive acts and practices described herein;

m.  Penalties as provided by law;

n.  Treble damages;

o.  A permanent injunction enjoining Breville from continuing the unlawful, unjust, unfair, and deceptive acts and practices described herein, including but not limited to, an injunction preventing incorporation of the Defect in future countertop oven models;

p.  Pre-judgment and post-judgment interest;

q.  Reasonable attorneys' fees and expenses; and

r.  Such other further relief that the Court deems just and equitable.

Dated: June 22, 2023

Respectfully submitted,

*/s/ Matthew A. Smith*
Matthew A. Smith
**MIGLIACCIO & RATHOD LLP**
201 Spear Street, Suite 1100
San Francisco, CA 94105
Tel: (831) 687-8255
msmith@classlawdc.com

Nicholas A. Migliaccio (*pro hac vice*)
Jason S. Rathod (*pro hac vice*)
Mark D. Patronella (*pro hac vice*)
**MIGLIACCIO & RATHOD LLP**
412 H Street NE
Washington, DC 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com
mpatronella@classlawdc.com

Dan E. Gustafson (*pro hac vice* forthcoming)

David A. Goodwin (*pro hac vice* forthcoming)
Kaitlyn L. Dennis (*pro hac vice* forthcoming)
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel. (612) 333-88844
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
kdennis@gustafsongluek.com

Scott David Hirsch (*pro hac vice*)
**SCOTT HIRSCH LAW GROUP PLLC**
Fla. Bar No. 50833
6810 N. State Road 7
Coconut Creek, FL 33073
Tel: (561) 569-7062
scott@scotthirschlawgroup.com